**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**PADEN McCULLOUGH and
FRANK BENSIECK**                                                    **PLAINTIFFS**

**VS.**                                              **CIVIL ACTION NO. 1:05CV42-P-D**

**CITY OF TUPELO, MISSISSIPPI
TUPELO LEE HUMANE SOCIETY and
SHEILA HORTON, in her individual capacity**              **DEFENDANTS**

**DEFENDANT TUPELO-LEE HUMANE SOCIETY'S
MOTION FOR SUMMARY JUDGMENT**

**COMES NOW,** Defendant Tupelo-Lee Humane Society (hereinafter "TLHS"), by and

through counsel of record, and files this its Motion for Summary Judgment. TLHS requests that the

Court waive the requirement for filing a separate memorandum of authorities as all authorities relied

upon are cited herein. In support of its Motion, TLHS would show unto the Court as follows:

## I. FACTS

The following facts are established by either admission and/or pleadings and are true and

correct:

In December of 2004, Plaintiff Paden McCullough, a resident of Oxford, Mississippi, arrived

in the Tupelo, Mississippi area to visit his parents, Kathryn and Mike McCullough. The

McCulloughs resided at 1525 Larkspur Circle, Tupelo, Mississippi. Plaintiff McCullough arrived

in Tupelo, Mississippi with a nursing pit bull terrier and her eight (8) six-week old puppies. *See*

Deposition Transcript of Paden McCullough attached hereto as Exhibit "A," page 25. The puppies

were being kept in the garage of the McCullough home located at Larkspur Circle and the adult dogs

in the fenced-in backyard area of the property. *See* Exhibit "A," page 97.

278614.WPD                                    1

On or about December 29, 2004, the nursing pit bull and another pit bull owned by the Plaintiffs dug under the backyard fence and entered a neighboring property owned by Brandi Fletcher, located at 1449 Columbine Drive, Tupelo, Mississippi. Ms. Fletcher called the TLHS reporting the presence of the at-large dogs on her property and advising that one of the pit bulls had become aggressively confrontational with her dog and had thereafter chased her into her home. The receptionist at TLHS took the initial call from Ms. Fletcher. *See* Statement of Micki McMillan attached hereto as Exhibit "B." In turn, the Tupelo Police Department was contacted and also responded accordingly. *See* Tupelo Police Department Incident Report attached hereto as Exhibit "C." Ms. Fletcher complained that the two pit bulls that were in her backyard had tried to attack her dog and it took three separate attempts to get her dog inside because the two pit bulls had chased her into her home each time. *See* Exhibits "B" and "C."

In response to the complaint by Ms. Fletcher, two (2) animal control officers from the TLHS, Megan Shurden and Terry Harris, were dispatched immediately to 1449 Columbine Drive. *See* Statement of Megan Shurden attached hereto as Exhibit "D," as well as the Statement of Terry Harris attached hereto as Exhibit "E." When they arrived at 1449 Columbine Drive, Ms. Fletcher and her husband were standing in their driveway talking to officers from the Tupelo Police Department. Ms. Shurden and Mr. Harris opened the gate to Ms. Fletcher's backyard where they observed two pit bulls. *See* Exhibits "D" and "E." Mr. Harris was able to quickly catch the male gray pit bull and Ms. Shurden loaded the dog into the animal control truck. *See* Exhibit "E." The remaining pit bull in Ms. Fletcher's backyard was very aggressive and she charged at both Ms. Shurden and Mr. Harris several times. *See* Exhibits "D" and "E." Ms. Shurden and Mr. Harris noticed that part of the fence in the backyard was broken and a chocolate pit bull was trying to exit the yard through the hole, but

278614.WPD

2

was unable to do so.  *See* Exhibits "D" and "E."  The chocolate pit bull finally backed out of the hole and the gray female pit bull escaped through the hole which was the point of entry for the dogs.  *See* Exhibit "D."

The Animal Control Officers then went to 1525 Larkspur Place with the Tupelo Police Officers.  This residence is located immediately behind Ms. Fletcher's home.  The Animal Control Officers rang the doorbell to the home but no one answered the door, so they assumed that no one was home.  *See* Exhibits "D" and "E."  The Animal Control Officers walked around the side of the house where the fence was and saw that there were three pit bulls in the backyard.  After evaluating the situation, the Animal Control Officers knew that they could not leave the pit bulls there with the hole in the fence.  They were able to catch the chocolate pit bull through the gate with a catch-pole and the dog was loaded into the animal control truck.  *See* Exhibits "D" and "E."

The Plaintiff, Paden McCullough, then came out of the house and the Animal Control Officers explained the situation to him.  *See* Exhibit "A," pages 59-60, as well as Exhibits "D" and "E."  Mr. McCullough advised the Animal Control Officers that the female pit bull had recently had puppies.  *See* Exhibit "A," page 60, as well as Exhibits "D" and "E."  Ms. Shurden asked the Plaintiff where the puppies were being kept and he advised that they were in the garage.  Mr. McCullough opened the garage and revealed the eight (8) gray pit bull puppies.  *See* Exhibit "A," page 60, as well as Exhibits "D" and "E."  Mr. McCullough did mention to the Animal Control Officers that they were still nursing.  The Animal Control Officers explained to Mr. McCullough all the city ordinances which he was in violation of and he stated that he was not aware of the ordinances.  *See* Exhibit "A," page 60, as well as Exhibits "D" and "E."  Thereafter, Ms. Shurden called her superior, Sheila Horton, Manager of the TLHS, because Ms. Shurden was not sure what to do about the eight (8) puppies.  *See* Exhibit "D."  *See* also Deposition Transcript of Sheila Horton

attached hereto as Exhibit "F," pages 6-9. Initially, Ms. Horton advised Ms. Shurden to leave the nursing mother and puppies. *See* Exhibit "F," pages 8-9. However, Ms. Shurden advised Ms. Horton that she could not leave the female pit bull because she was the most aggressive and was the one that pulled Terry Harris to the ground and had also been the one attacking Ms. Fletcher's dog. *See* Exhibit "D." Ms. Horton then advised Ms. Shurden to seize the nursing puppies and the female mother due to concerns that the puppies could not survive without the mother. *See* Exhibit "E," page 23. Mr. McCullough was told to contact the Animal Control Shelter that afternoon to speak with Ms. Horton about the possible release of the animals. *See* Exhibit "D." Mr. McCullough told the Animal Control Officers that the puppies were still nursing and could not be away from the mother. *See* Exhibit "A," pages 60-61.

Upon arriving at the Shelter, the Animal Control Officers placed the mother pit bull and her puppies in a run with a bed, blanket and her own pet taxi which is used to place puppies in while the run is being cleaned. This taxi was kept in the run for the puppies only to help prevent the spread of diseases. *See* Exhibit "F," pages 30-31.

On or about December 30, 2004, correspondence from Jim Waide was hand delivered to TLHS regarding the seizure of the dogs owned by Plaintiff McCullough and demanding their immediate release. *See* Correspondence from Jim Waide attached hereto as Exhibit "G." The following day, December 31, 2004, the puppies were released to Paden McCullough. *See* Deposition Transcript of Frank Bensieck attached hereto as Exhibit "H," page 27.

Approximately two (2) to three (3) days later, Plaintiffs allege that some of the puppies began exhibiting symptoms similar to those related to Parvo. *See* Exhibit "H," page 27. *See* also Exhibit "A," pages 65-66. The sick puppies were taken to a local veterinarian, Dr. John Morris, for examination and Parvo testing. *See* Deposition Transcript of Dr. John Morris attached hereto as

Exhibit "I," page 10. All Parvo tests were negative. *See* Exhibit "I," pages 10-12 and 19-21. Despite the negative test results, Dr. Morris informed Plaintiffs that he believed the puppies were ill due to Parvo or a Parvo related illness. *See* Exhibit "A," pages 69-70.

Plaintiffs allege that within two (2) weeks after being released from TLHS, all eight (8) puppies had died. *See* Exhibit "A," page 84. Plaintiffs did not perform a necropsy on any of the deceased puppies, so no definite cause of death has ever been established. *See* Exhibit "A," pages 71-72 and Exhibit "I," page 15.

Thereafter, Plaintiffs filed this action claiming that the ordinance of the City of Tupelo unconstitutionally allows the seizing of all puppies without a warrant and without a due process hearing. Specifically, Plaintiffs allege that Section 6-96 of the Ordinances of the City of Tupelo, Mississippi defines any pit bull terrier as a "dangerous" animal, even without evidence that the animal is in fact, dangerous. Plaintiffs further allege that the ordinance is arbitrary and overly broad, since it classifies all pit bull terriers as "dangerous" animals, without respect to the age or to whether they are or are not, in fact, dangerous or vicious. Plaintiffs also allege that Tupelo City Ordinance 6-100 permits an officer to seize an animal on the grounds that the animal is "vicious" and to hold such animal until such time as a fine has been paid, thus depriving the owner of due process. Plaintiffs contend that the ordinance is also unconstitutional because it permits the City of Tupelo to extract a fine without any notice of hearing or hearing, and it also arbitrarily classifies an animal as being "vicious" even when the animal is a small puppy, which cannot endanger anyone. Additionally, Plaintiffs contend that because the puppies were seized without any prior hearing or any provision for an immediate hearing without the authorization of any judicial officer, the Fourth and Fourteenth Amendment to the United States Constitution were violated. Plaintiffs also assert that their right to be free from negligence under state law was violated as it was negligent to seize

the four week old puppies who had not had their shots and other immunizations. Finally, Plaintiffs assert that the individual defendant, Sheila Horton, is not entitled to any good faith immunity because the rights involved in this case were established and well-settled. Plaintiffs allege that they have suffered damages by the death of the eight puppies with a value of $1,500.00 each and mental anxiety.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). *Riverwood International Corp. v. Employers Ins. of Wausa*, ___F.3d.___, 2005 WL 1840057 (5th Cir. 2005); *ACS Construction Company, Inc. of Mississippi v. CGU*, 332 F.3d 885 (5th Cir. 2003). To prevent summary judgment, the nonmoving party must establish a genuine issue of material fact by means allowable under the rule." *Richmond v. Benchmark Const. Corp.,* 692 So.2d 60,61 (Miss. 1997); *Lyle v. Mladinich*, 584 So.2d 397, 398 (Miss. 1991).

## III. <u>LEGAL ARGUMENT AND AUTHORITIES</u>

Plaintiffs cannot pursue their state law claims against the Defendants because the Plaintiffs have failed to comply with the notice requirements required by Mississippi Code Annotated § 11-46-11. The Plaintiffs did serve a Notice of Claim and an Amended Notice of Claim upon the City of Tupelo, Mississippi but not the TLHS. Therefore, the one hundred twenty (120) day waiting period has not even begun to run against these defendants. Because the Plaintiffs' Notice of Claim and Amended Notice of Claim as to the TLHS and Sheila Horton do not comply with Mississippi Code Annotated § 11-46-11, the Plaintiffs cannot pursue any state law claims against these Defendants.

Even if we assume that the Plaintiffs did file a proper Notice of Claim against TLHS and

Case: 1:05-cv-00042-WAP-JAD Doc #: 82 Filed: 03/07/06 7 of 19 PageID #: 624

Sheila Horton, Title XI, Chapter 36, Section 11-46-1, et seq. of the Mississippi Code provides for the exclusive civil remedy against the state and its political subdivisions and torts of their employees. See *Miss. Code Ann. § 11-46-7 (Supp. 1998).* Importantly, a governmental employee may only be held individually liable if the employee's conduct "constituted fraud, malice, libel, slander, defamation or any criminal offense." *Id.* Plaintiffs allegations against TLHS should be dismissed because it cannot be held liable for enforcing a valid ordinance enacted by the City of Tupelo. See *Miss. Code. Ann. §11-46-9(1)(b).* The ordinance has never been held unconstitutional, overly broad or arbitrary. Therefore, TLHS is entitled to summary judgment because this Defendant cannot be held liable for enforcing a valid ordinance regardless of whether the ordinance may be deemed unconstitutional. *Id.*

Finally, Plaintiffs' claim against TLHS pursuant to 42 U.S.C. § 1983 should be dismissed because the constitutional rights at issue had not been clearly established at the time Sheila Horton acted in her official capacity. Likewise, the TLHS as the enforcing body is afforded the same protection as Sheila Horton and is not subject to a claim under 42 U.S.C. § 1983.

A.     **PLAINTIFFS' STATE LAW CLAIMS FAIL**

1.     **No Notice of Claim Given**

Plaintiffs filed their Motion for Leave to File First Amended Complaint on May 26, 2005. *See* Motion for Leave to File First Amended Complaint attached hereto as Exhibit "J." The Motion for Leave to File First Amended Complaint states that Defendant[1] was served with an Amended Notice of Claim on March 22, 2002[2] pursuant to Miss. Code Ann. § 11-46-1, et. seq. The motion

---

[1]Defendant Sheila Horton believes Plaintiffs are referring to the City of Tupelo as Plaintiffs only refer to a single Defendant.

[2]The incident upon which the Plaintiffs' Complaint is based did not occur until December 29, 2004. Therefore, an Amended Notice of Claim could not have been served on March 22, 2002.

278614.WPD                                      7

further states that more than 120 days have passed since the filing of the Amended Notice of Claim and that Defendant failed to respond to the Plaintiffs' notice under the Mississippi Tort Claims Act for state law torts. *See* Exhibit "J." The Plaintiffs sought to amend their Complaint to include the state law tort claims against all defendants. This Court granted the Plaintiffs' Motion for Leave to File First Amended Complaint and the Plaintiffs filed their First Amended Complaint on May 27, 2005. However, it should be noted that the Court granted Plaintiffs Leave to Amend before Defendants had the opportunity to respond and certainly before Defendants' deadline to respond had passed. *See* Order attached hereto as Exhibit "K." The Plaintiffs amended their original Complaint to state that this Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a), since this case involves interpretations of laws of Miss. Code Ann. § 11-46-1 et seq. *See* Plaintiffs' First Amended Complaint attached hereto as Exhibit "L." Plaintiffs acknowledge in Paragraph XV of their First Amended Complaint that the defendants are governmental agencies and a Notice of Claim is required before this suit can proceed on the state law claims. *See* Exhibit "L." Plaintiffs state in Paragraph XV that the "state law claims against governmental defendants will be prosecuted after the applicable waiting period has expired." Plaintiffs stated that they had filed their Notice of Claim which they attached as Exhibit "B" to the First Amended Complaint and an Amended Notice of Claim was attached as Exhibit "C" to the Plaintiffs' First Amended Complaint. *See* Exhibit "L." The original Notice of Claim is dated February 1, 2005[3] and Plaintiffs' Amended Notice of Claim is dated February 2, 2005. These notices were served upon Defendant City of Tupelo, Mississippi and **not** the TLHS or Sheila Horton. Defendant TLHS and Sheila Horton have never been served with any Notice of Claim or Amended Notice of Claim as required by Miss. Code Ann. § 11-46-11.

---

[3]Notably, Plaintiffs stated to the court that the Notice of Claim that he filed in March 2002, which contradicts the date the claim which allegedly occurred on December 29, 2004 and the Notice of Claim attached to Plaintiffs' Motion.

278614.WPD

Miss. Code Ann. § 11-46-11 states in pertinent part:

> (3) All actions brought under the provisions of this chapter shall be
> commenced within one (1) year next after the date of the tortious,
> wrongful or otherwise actionable conduct on which the liability phase
> of the action is based and not after; provided, however, that the filing
> of a notice of claim as required by subsection (1) of this section shall
> serve to toll the statute of limitations for a period of ninety-five (95)
> days from the date the chief executive officer of the state agency
> receives the notice of claim, or for one hundred twenty (120) days
> from the date the chief executive officer or other statutorily
> designated official of a municipality, county or other political
> subdivision receives the notice of claim, during which time no action
> may be maintained by the claimant unless the claimant has received
> a notice of denial of claim.

Because Plaintiffs have never served TLHS with a Notice of Claim as required by Miss. Code Ann.

§ 11-46-11,  Plaintiffs cannot pursue any  claims against TLHS or Sheila Horton. Further, because

Plaintiffs did not wait the requisite period before filing suit against Defendants Sheila Horton and

TLHS, any Notice of Claim if valid, would not be sufficient to save Plaintiffs claims. Miss. Code

Ann. § 11-46-11. Hence, Defendant TLHS should be granted summary judgment due to Plaintiffs'

failure to comply with the applicable notice provisions contained in Miss. Code Ann. § 11-46-11.

### 2. Defendant Tupelo-Lee Humane Society Is Immune From Liability

#### a. TLHS is a "governmental entity" afforded immunity.

TLHS is a "governmental entity" as defined by the Mississippi Tort Claims Act.

Mississippi Code Annotated § 11-46-1 defines a governmental entity as follows:

> (g) "Governmental entity" means and includes the state and
> political subdivisions as herein defined.

Further, Mississippi Code Annotated § 11-46-1(i) defines a political subdivision as

follows:

> (i) "Political subdivision" means any body politic or body
> corporate other than the state responsible for governmental

> activities only in geographic areas smaller than that of the state, including, but not limited to any county, municipality, school district, community hospital as defined in § 41-13-10, Mississippi Code of 1972, airport authority or other instrumentality thereof, whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name.

The Tupelo-Lee Humane Society is clearly a "political subdivision" as defined by the Mississippi Tort Claims Act. The City of Tupelo has specifically delegated to the TLHS the responsibility of receiving and responding to all calls from any person, agency, or governmental entity concerning possible violations of the City of Tupelo's animal control ordinance. *See* Contract between City of Tupelo and Tupelo-Lee Humane Society attached hereto as Exhibit "M." The TLHS is also responsible for receiving and/or responding to any and all calls from any persons, organization, or public entity concerning any type of animal, whether domestic or wild, located within the city limits of the City of Tupelo. Therefore, the TLHS is clearly responsible for governmental activities and the TLHS falls squarely within the meaning of "political subdivision" as defined by the Mississippi Tort Claims Act.

> b.   *TLHS is immune from liability pursuant to Miss. Code Ann. §11-46-9.*

Mississippi Code Annotated §11-46-9(1)(b) affords immunity to the TLHS under these specific circumstances. The statute states in pertinent part,

> (1)   A governmental entity and its employees acting within the course and scope of their employment or duties <u>shall not be liable for any claim</u>:
>
> (b)   Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, <u>ordinance</u> or regulation, <u>whether or not the statutue, ordinance or regulation be valid;</u>

In other words, the TLHS and Sheila Horton enjoy immunity if they exercised ordinary care in enforcing the animal control ordinance enacted by the City of Tupelo. *Id.* In addition, the TLHS also enjoys immunity under Miss. Code Ann. §11-46-9(1)(d) "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." *Miss. Code Ann. §11-46-9(1)(d).*

Here, the TLHS and its employees, including Sheila Horton, were simply enforcing a valid animal control ordinance enacted by the City of Tupelo. Miss. Code Ann. §11-46-9(1)(b) clearly states that the TLHS, as a governmental entity, and its employees cannot be held liable for enforcing the City of Tupelo's animal control ordinance <u>whether or not the ordinance is valid</u>. *Miss. Code Ann. §11-46-9(1)(b).* The undisputed facts clearly demonstrate that the TLHS had the authority, pursuant to the City of Tupelo's animal control ordinance, to seize the Plaintiffs' pit bull and puppies. Sheila Horton's decision to seize the puppies was based primarily on her concern that the puppies needed to be with their mother. TLHS's actions clearly arose out of its duty to enforce Tupelo's animal control ordinance; therefore, TLHS is afforded immunity and is entitled to summary judgment.

### 3. No Proof of Any Liability on Behalf of Defendant Tupelo-Lee Humane Society

Plaintiffs have alleged that the puppies which are the subject of this litigation contracted parvo or a parvo-related illness while in the custody and control of TLHS. *See* Exhibit "L." However, Plaintiffs have failed to support this allegation either with physical proof or with expert witness testimony. In fact, Plaintiffs' own veterinary expert, Dr. John Morris, has testified that all puppies which were treated by him following their release from TLHS tested negative for the

parvo virus.  *See* Exhibit "I," pages 10-12 and 19-21.  Dr. Morris further testified that he cannot definitively conclude that the puppies became sick as a result of being exposed to any illness while in the custody and control of TLHS.  *See* Exhibit "I," page 15 and 26.  Dr. Morris further testified that the only definitive way to determine what caused the death of the puppies would be to conduct a necropsy, which was never performed on any of the puppies in question.  *See* Exhibit "I," pages 26-27.

Plaintiffs have alleged that the puppies became sick and eventually died as a result of exposure to illness while in the custody and control of TLHS.  However, throughout the discovery process, Plaintiffs have failed to support this claim, either with physical proof or witness testimony.  There is absolutely no evidence that TLHS is liable for the puppies' deaths.  Therefore, Defendant TLHS is entitled to summary judgment as to Plaintiffs' claims that the puppies died as a result of being exposed to any illnesses while in the custody of TLHS.

### B.   PLAINTIFFS FEDERAL LAW CLAIMS FAIL

#### 1.   No Liability For Enforcing Ordinance of City of Tupelo

TLHS is entitled to summary judgment because TLHS, by and through its employees, cannot be held liable for enforcing a valid ordinance enacted by the City of Tupelo.  *Miss. Code Ann. §11-46-9(1)(b).*  The Plaintiffs' First Amended Complaint basically alleges that the TLHS and Sheila Horton enforced Section 6-96 of the ordinances of the City of Tupelo, Mississippi.  Plaintiffs allege that Section 6-96 is unconstitutionally overbroad and arbitrary.  However, Tupelo City Ordinance 6-96 has never been held unconstitutional or invalid.  Defendant TLHS cannot be held liable for enforcing an ordinance which is only alleged to be unconstitutional.  *Id. See also Pierson v. J. L. Ray*, 386 U.S. 547, 87 S.Ct. 1213 (1967) (holding that a police officer should be excused from liability for false arrest where he acted under a statute that he reasonably

believed to be valid but that was later held unconstitutional on its face or as applied.)  Defendant, TLHS, reasonably believed that Tupelo City Ordinance 6-96 was a valid city ordinance which the TLHS had a duty to enforce in accordance with its contract with the City of Tupelo.  Therefore, TLHS is entitled to summary judgment because it cannot be held liable for enforcing a valid ordinance regardless of whether the ordinance may be deemed unconstitutional.  *Id.*

### 2.    No Liability Under § 1983

Finally, TLHS is entitled to summary judgment pursuant to 42 U.S.C. § 1983 because the constitutional rights at issue have not been "clearly established" at the time Sheila Horton acted in her official capacity.  The Plaintiffs' Section 1983 claim fails unless the Plaintiffs can demonstrate that the constitutional rights at issue were clearly established at the time Defendant, Sheila Horton took action.  *Clanton v. Orleans Parish School Board*, 649 F.2d 1084 (5th Cir. 1981).  The Plaintiffs' allegations even confirm that Defendant Sheila Horton was simply enforcing a valid city ordinance which was enacted by the City of Tupelo.  An individual defendant is entitled to qualified immunity under Section 1983 and there are two components to the qualified immunity defense.  Under the subjective test, an official is not entitled to the defense if he acts with malicious intention to cause a deprivation of constitutional rights where other injury to the plaintiff.  *Wood v. Strickland*, 420 U.S. 308, 1995 S.Ct. 992, 43 L.Ed. 2d 214 (1975).  Under the objective test, a public official is not immune from liability if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff.  *Id*.  Both these tests require public officials to be aware of the legal rights of persons who are affected by their actions, but does not charge officials with predicting the future course of constitutional law.  *Id* at 1000, quoting *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed. 2d 288 (1967).  Here, the Plaintiffs do not even allege that Defendant Sheila Horton acted with malice and there is

no evidence that Sheila Horton acted with malicious intention to cause a deprivation of constitutional rights or other injury. Furthermore, Sheila Horton cannot be held individually liable because she could not have reasonably known that her action would violate any constitutional rights of the Plaintiffs. When Defendant Sheila Horton was acting in her official capacity, she was enforcing a valid city ordinance enacted by the City of Tupelo. She could not have known that her actions were violating any constitutional rights of the Plaintiffs. Defendant Sheila Horton is clearly entitled to good faith immunity because the rights involved in the case are not clearly established and well-settled. Likewise, the TLHS, as the enforcing body, is afforded the same protection. Thus, the Plaintiffs' Section 1983 claim against Defendant TLHS is ripe for summary judgment.

### C.   PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES

#### 1.   Punitive Damages Are Not Recoverable Pursuant to Miss. Code Ann. 11-46-15.

Plaintiffs' Complaint and First Amended Complaint seek actual and punitive damages in an amount to be determined by the jury. *See* Exhibit "L." However, Mississippi law is clear that the Plaintiffs cannot recover punitive damages from a governmental entity or its employee. Mississippi Code Annotated § 11-46-15(2) of the Mississippi Tort Claims states:

> No judgment against a governmental entity or its employee for any act or omission for which immunity is waived under this chapter shall include an award for exemplary or punitive damages or for interest prior to judgment, or an award of attorneys fees unless attorneys fees are specifically authorized by law.

Thus, the TLHS cannot be held liable for punitive damages and summary judgment should be granted with regard to Plaintiffs' punitive claim. See *Madison v. Desoto County*, 822 So.2d 306 (Miss. App. Ct. 2002) (Mississippi Code Annotated § 11-46-15, provides that no governmental body, or employee thereof, may be held liable for punitive damages in any action in the courts of the state

of Mississippi; thus, a resident's claim for punitive damages from a county was barred.)

      **2.    In The Alterative, Should TLHS Not Be Considered A "Governmental Entity," Plaintiffs Are Still Not Entitled to Punitive Damages**

Plaintiffs cannot recover punitive damages even if TLHS is not considered a "governmental entity" because there is no proof of gross negligence. Plaintiffs have alleged that the puppies which are the subject of this litigation contracted parvo or a parvo-related illness while in the custody and control of TLHS and that they are entitled to punitive damages. *See* Exhibit "L." However, Plaintiffs have failed to support this allegation either with physical proof or with expert witness testimony, as previously argued in Section A (3). Plaintiffs' own veterinary expert cannot conclude that (1) the death of any of the puppies was a result of parvo; and (2) the puppies contracted any illness while in the custody and control of TLHS. *See* Exhibit "I," page 15 and 26. Further, Dr. Morris testified that the only definitive way to determine causes of death in animals is by conducting a necropsy. However, a necropsy was never performed on any of the puppies in question. *See* Exhibit "I," pages 26-27.

Plaintiffs have failed to provide proof of any negligence on behalf of TLHS. If no negligence exists, there can be no award of punitive damages. Punitive damages are available in Mississippi only upon a showing that there is either gross negligence resulting in personal injury, or some flagrant act performed by a wrongdoer which amounts to willful, malicious, or wanton conduct. *Mutual Life Ins. Co. of New York v. Estate of Wesson*, 517 So. 2d 521 (Miss. 1987). Sheila Horton, on behalf of TLHS, was simply enforcing a valid ordinance of the City of Tupelo when the puppies were taken into custody. Additionally, there is absolutely no evidence to indicate that the puppies in question were not properly cared for while in the custody and control of TLHS. The facts of this case do not, under Mississippi law, warrant the imposition of punitive damages.

Though Plaintiffs allege that TLHS acted with a gross and reckless disregard for the well being and safety of the puppies, that alone is not sufficient; there must be a factual basis for this claim**.** See *Miss. R. Civ. P. 11*. "One cannot, of course, create a claim for punitive damages where none exists by merely inserting a conclusory allegation of wilful and wanton conduct into a set of facts which would not support a finding of such conduct as a matter of law." *Bastian v. TPI Corp*., 663 F. Supp. 474, 476 (N.D. Ill. 1987). There is no evidence that TLHS acted with gross and reckless disregard for the safety of the puppies. Under the undisputed material facts, Plaintiffs are not entitled to punitive damages from TLHS and summary judgment is warranted.

### D. PLAINTIFFS ARE NOT ENTITLED TO DAMAGES FOR MENTAL ANXIETY

Plaintiffs also seek to recover damages for mental anxiety. The Plaintiffs' primary allegation against the TLHS is that the TLHS was negligent by allowing the Plaintiffs' dogs to contract Parvo while the dogs were being held at the TLHS. Plaintiffs now seek to recover damages for mental anxiety due to the deaths of the dogs. However, under the substantive law of Mississippi, a party cannot recover damages for mental anxiety based solely on damage to personal property. See *Mississippi Power Company vs. Lee Harrison, Jr.*, 152 So.2d 892 (Miss. 1963) (In computation of damages a person is to be made whole, or complete satisfaction is to be made, or he is to recover the value of the property destroyed; it is never contemplated that the injured party should realize a profit from the damages sustained.) Damages are recoverable for mental anguish even though no bodily injury is sustained or other pecuniary damage alleged or proved if the defendant's conduct was willful, wanton, intentional or malicious. See *Whitten v. Cox*, 799 So.2d 1 (Miss. 2000). Here, Plaintiffs are not seeking damages for bodily injury nor have the Plaintiffs alleged that the TLHS actions were willful, wanton, malicious or intentional. The Plaintiffs are only entitled to recover the value of the dogs at the time of death. See *R. B. Harper v. Hudson*, 418 So.2d 54 (Miss. 1982)

(If property is totally destroyed or rendered absolutely valueless in accident or casualty, damage would be value of property at time of such destruction. Damages are recoverable for mental anguish even though no bodily injury is sustained or other pecuniary damage alleged or proved if the defendant's conduct was willful, wanton, intentional or malicious.) Therefore, Plaintiffs are only entitled to recover the value of the dogs at the time of death. Plaintiffs are not entitled to recover damages for mental anxiety. THLS is entitled to summary judgment with regard to Plaintiffs' claim for mental anxiety damages based on the substantive law of Mississippi.

## CONCLUSION

Based on the foregoing, Defendant Tupelo-Lee Humane Society requests that the Court enter summary judgment in its favor because under the undisputed facts: (1) No notice of claim was properly served by Plaintiffs; (2) Defendant TLHS is immune pursuant to Miss. Code Ann. § 11-46-9(1)(b) and cannot be held liable; (3) There is no proof of any liability on behalf of Defendant TLHS; (4) There is no liability for enforcing a valid ordinance of the City of Tupelo; (5) There is no liability under § 1983; (6) Punitive damages are not recoverable pursuant to Miss. Code Ann. 11-46-15; (7) Regardless of determination as to whether Defendant TLHS is "governmental entity," Plaintiffs are still not entitled to punitive damages; and (7) Plaintiffs are not entitled to damages for mental anxiety pursuant to Miss. Code Ann. § 11-46-15.

The following exhibits are attached to this motion in support of same:

| | | |
|---|---|---|
| Exhibit "A" | - | Excerpts of Deposition Transcript of Paden McCullough; |
| Exhibit "B" | - | Tupelo Police Department Incident Report; |
| Exhibit "C" | - | Statement of Micki McMillan; |
| Exhibit "D" | - | Statement of Megan Shurden; |
| Exhibit "E" | - | Statement of Terry Harris; |
| Exhibit "F" | - | Excerpts of Deposition Transcript of Sheila Horton; |
| Exhibit "G" | - | Correspondence from Jim Waide, Esq.; |
| Exhibit "H" | - | Excerpts of Deposition Transcript of Frank Bensieck; |
| Exhibit "I" | - | Excerpts of Deposition Transcript of Dr. John Morris; |

Exhibit "J"   -   Plaintiffs' Motion for Leave to File First Amended Complaint;
Exhibit "K"   -   Order Granting Motion for Leave to File First Amended Complaint;
Exhibit "L"   -   Plaintiffs' First Amended Complaint; and
Exhibit "M"   -   Contract between City of Tupelo and Tupelo-Lee Humane Society.

**WHEREFORE, PREMISES CONSIDERED**, the Defendant, TLHS, respectfully requests that this Court grant summary judgment as to all claims against it in this matter. Defendant TLHS further requests that the Plaintiffs be assessed with the costs of bringing this motion and for any other relief the Court deems appropriate.

**RESPECTFULLY SUBMITTED,** this the 7th day of March, 2006.

                                               **WEBB, SANDERS & WILLIAMS, P.L.L.C.**
                                               **363 NORTH BROADWAY**
                                               **POST OFFICE BOX 496**
                                               **TUPELO, MISSISSIPPI 38802**
                                               **(662) 844-2137**
                                               **B. WAYNE WILLIAMS MSB # 9769**
                                               **REAGAN D. WISE, MSB #100309**

                                             **BY: /s/ B. Wayne Williams**

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**Jim Waide, Esq.**
**Waide & Associates, P.A.**
**P. O. Box 1357**
**Tupelo, MS 38802**

**Berkley N. Huskison,Esq.**
**Mitchell McNutt & Sams, P.A.**
**P. O. Box 7120**
**Tupelo, MS 38802**

**THIS**, the 7th day of March, 2006.

<u>s/ B. Wayne Williams</u>
**B. WAYNE WILLIAMS**